UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARTIN VALADEZ, ) <br> ) <br> Defendant. ) | No. 08 C 3178 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Petitioner Martin Valadez was sentenced to life in prison following a jury trial in which he was found guilty of drug offenses and money laundering. Before the Court is Petitioner's *pro se* motion under 28 U.S.C. § 2255, challenging his sentence.

## BACKGROUND

The United States indicted Petitioner and charged him with conspiracy to distribute multiple kilograms of cocaine, possession of cocaine, and money laundering. At trial, the Government presented significant evidence of Petitioner's guilt that included recordings of conversations of Petitioner with co-conspirators regarding his drug activities, twelve kilograms of cocaine recovered from behind the Petitioner's home, over $134,000 seized from Petitioner, and tax and accounting documentation of Petitioner's finances as evidence of Petitioner's income. The jury found Petitioner guilty of each count of the indictment on February 22, 2005. The Court denied Petitioner's post-trial motions and request for a new trial and sentenced Petitioner to life in prison. Petitioner was appointed counsel to evaluate Petitioner's appeal. Petitioner's counsel found no non-frivolous issue to argue on appeal and requested leave to withdraw from the case. Petitioner objected to his counsel's request to withdraw, but the

Seventh Circuit Appellate Court nonetheless permitted counsel to withdraw and denied Petitioner's appeal as frivolous. *United States v. Valadez*, 222 Fed. Appx. 527 (7th Cir. 2007).

## LEGAL STANDARD

Section 2255 reads, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255 (2006). The relief described in this section is available only if there was "an error of law that is jurisdictional, constitutional, or constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1992)). *Habeas corpus* relief pursuant to § 2255 is only for "extraordinary situations," and the motion is not to be used as a substitute for an appeal. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 2006) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)).

A claim that could have been raised on appeal is procedurally defaulted if not raised in the appeal. *Ballinger v. United States*, 379 F.3d 427, 429 (7th Cir. 2004). The failure to raise an ineffective-assistance-of-counsel claim on appeal, however, does not constitute a waiver of a claim by a defendant under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). A district court must review the record and draw all reasonable inferences in favor of the government when reviewing a § 2255 motion. *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992). Finally, a § 2255 Petitioner is entitled to an evidentiary hearing only where the

2

Petitioner "alleges facts that, if proven, would entitle him to relief." *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009) (quoting *Hall v. United States*, 371 F.3d 969, 972 (7th Cir.2004)).

## ANALYSIS

Petitioner argues that the Court should vacate his sentence or hold an evidentiary hearing to evaluate new evidence. Petitioner alleges that he was denied effective assistance of counsel both at trial and on appeal, that he was denied due process, and he has new evidence of his innocence.

### Ineffective Assistance of Trial Counsel

Petitioner's allegations of ineffective counsel at both the trial and appellate court level is subject to the familiar test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (*Strickland*). *Strickland* requires a showing by the defendant that: (1) his counsel's performance fell below an objective standard of reasonableness, and (2) the deficient performance of counsel caused prejudice to the outcome of the case. *Id.* Review of a claim of ineffectiveness of counsel is highly deferential to counsel. *Valenzuela v. United States*, 261 F.3d 694, 698 (7th Cir. 2001) (*Valenzuela*). The second element of the *Strickland* test requires the Petitioner to prove a reasonable probability that if the error was not committed, the outcome of the case would have been different. *Valenzuela*, 261 F.3d 699.

*Advice Concerning Potential Sentence at the Plea-Bargaining Stage*

The first purported error claimed by Petitioner is that his counsel failed to advise and explain that Petitioner might be sentenced to life imprisonment if he were found guilty at trial. In the plea-bargain context, to show ineffective assistance of counsel, Petitioner must show (1) "that

3

counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence" and (2) "that his lawyer's deficiency was a decisive factor in his decision to plead guilty." *United States v. Cieslowski*, 410 F.3d 353, 358-59 (7th Cir. 2005). The Seventh Circuit has cautioned that this is a "stringent standard." *Id.* at 359.

Petitioner argues that while he was advised by the Court and by the Government that he could face life imprisonment if convicted, his attorney told him that the Government was just trying to scare him and that a guilty verdict would result in a sentence of 10 to 12 years' imprisonment. Even if Petitioner's account of his conversation with his attorney is accurate, however, his allegations do not rise to the level of ineffective-assistance-of-counsel under the standard set out above. Petitioner has not shown that his attorney did not make a good-faith estimate of the likely sentence. In similar cases, the Seventh Circuit has held that an attorney's incorrect prediction of a sentence is not grounds for relief on an ineffective-assistance-of-counsel claim. *See, e.g., United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) ("mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim"); *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996) (same). Therefore, under Seventh Circuit standards, Petitioner has not shown that his counsel was ineffective at the plea-bargain stage.

*Failure to Introduce Petitioner's Financial Records*

Petitioner next alleges that his trial counsel failed to adequately investigate and prepare for the case. Petitioner's first allegation with respect to this claim is that his counsel was ineffective in not investigating and introducing Petitioner's financial records. In support of this argument, Petitioner has offered the affidavit of his accountant, Jon Herlehy. The affidavit states

4

that Petitioner's trial counsel spoke with Herlehy about five times and that, at counsel's request, Herlehy provided all documents pertaining to Petitioner to counsel. Further, the affidavit states that although counsel told Herlehy that he would be a valuable witness for Petitioner and that counsel planned to send an investigator to speak to Herlehy, Herlehy was never contacted by counsel again.

Petitioner argues that the records supplied by Herlehy, had they been presented to the jury, would have countered the Government's argument that Petitioner's lifestyle, which was beyond what was affordable to someone with Petitioner's reported income, indicated that Petitioner was earning income illegally. According to Petitioner, while the Govenment introduced evidence showing that his reported income was only $14,000 per year in the relevant period, the records from Herlehy would have shown that Petitioner and Petitioner's wife earned as much as $86,271.00 in a year during the relevant period.

The Government responds that counsel's decision not to introduce this evidence was a strategic decision that cannot now be second-guessed. The Government notes that at trial, the Government presented evidence of Petitioner's tax returns and those of his family. Had Petitioner presented evidence of additional income beyond that which he had reported for tax purposes, the Government argues, his credibility with the jury may have been damaged.

Petitioner counters that counsel's failure to make use of the records was not a strategic decision. Rather, Petitioner asserts, counsel simply never bothered to look at the records provided by Herlehy. This last assertion by Petitioner is unsupported by any evidence, and the argument is unpersuasive. Counsel's admitted five conversations with Herlehy are contrary to Petitioner's claim that counsel's conduct was deficient regarding the development of exculpatory

5

evidence. Moreover, as explained above, there is a rational basis for counsel's decision to refrain from introducing evidence of unreported income; it is doubtful if such evidence, if it existed, would be exculpatory. Thus, Petitioner has not satisfied the deficient-performance prong of the *Strickland* test. Furthermore, as noted above, the evidence of Petitioner's guilt presented to the jury was overwhelming. Petitioner has not shown that the outcome of the case would likely have been different had this information been presented to the jury.

*Failure to Introduce Paz's Financial Records*

Petitioner makes a similar argument with respect to the testimony of his mother-in-law, Isabel Paz. At trial, the Government argued that Petitioner had purchased property in Ingelside, Illinois, with proceeds from drug dealing. In rebuttal, Petitioner attempted to show that the property was conveyed to Petitioner and Petitioner's wife by Mrs. Paz for one dollar. During the Government's cross-examination of Mrs. Paz, the Government offered tax records suggesting that Mrs. Paz could not afford to purchase the property. Mrs. Paz claimed that she purchased the property with money saved from rents paid and from her husband doing odd jobs, which they had not reported on their taxes.

Petitioner argues: "Had counsel been an effective advocate for the [Petitioner] he would have anticipated the prosecution's use of tax records and procured available documents that would have shown that the Paz' [sic] did earn substantial income through rental property and unclaimed income from Mr. Paz' [sic] side jobs." This argument is not persuasive. Petitioner has not submitted any of the "available documents," nor has he specified or otherwise identified what they are. Petitioner merely offers the affidavit of Mrs. Paz, which generally restates her testimony at trial, testimony that the jury apparently did not find persuasive. Because Petitioner

has not identified any documents that would have bolstered Mrs. Paz's credibility, he cannot convincingly argue that his attorney erred by failing to introduce those purported documents.

*Failure to Introduce DuPage County Jail Phone Records*

Petitioner claims error by his counsel for failure to obtain phone records from the Dupage County Jail that would supposedly prove that, contrary to the Government's allegation, Petitioner did not threaten one of the witnesses against him. The Government claims that these tapes would likely not have been available since the request would have been four months after the alleged conversation. Furthermore, the Government points out, it is not certain that the tapes, if obtained, would have been favorable to Petitioner's case. Regardless of whether trial counsel's decision with regard to this matter was below an objective standard of reasonableness, Petitioner does not show that this omission would have changed the outcome of the case, given the overwhelming evidence against him.

*Failure to Cross-Examine Salinas on Extortion Allegations*

Next, Petitioner claims that trial counsel was ineffective in investigating and discrediting claims by Hugo Salinas, a prosecution witness, that Petitioner was extorting Salinas. However, the record shows that counsel did cross-examine Salinas on the issue. Petitioner's attorney introduced evidence that Salinas owed Petitioner a legitimate debt of $25,000 and that the allegations of extortion were false, thereby demonstrating Salinas's bias towards Petitioner. Trial counsel's performance in this regard did not fall below an objective standard of reasonableness. Furthermore, Petitioner has not shown that more extensive cross-examination of Salinas would have changed the outcome of the trial.

7

*Failure to Investigate Allegations of Government Misconduct*

Petitioner next argues that his counsel should have investigated his allegations of government misconduct. The misconduct allegations in both Petitioner's affidavit and his wife's affidavit indicate, *inter alia*, that he was assaulted and threatened by Drug Enforcement Administration ("DEA") and Round Lake, Illinois Officers over a several-year span. Petitioner includes a DVD of a Round Lake, Illinois traffic stop where Petitioner was pulled from his car after Petitioner refused to provide the police officers with his driver's license. The police officers then tried to handcuff Petitioner while he was on the ground, but Petitioner resisted. The police officers then hit Petitioner with a flashlight until he relented and placed his hands behind his back. Petitioner also includes with his affidavit a video made by the DEA in which there is an apparent statement by one of the officers that Petitioner should be shot. Petitioner indicates that he advised his counsel of this, and counsel agreed to investigate.

It is not clear that Petitioner's allegations of government misconduct could have helped Petitioner in his criminal case. For example, Petitioner identifies no evidence that should have been suppressed due to the government misconduct. Furthermore, it is not clear that an investigation into these matters would lead to any evidence that would have changed the outcome of Petitioner's case. Thus, Petitioner cannot satisfy the *Strickland* test on this basis.

*Failure to Cross-Examine*

Petitioner next argues that counsel was ineffective for failing to sufficiently challenge the testimony of three government witnesses: Ricardo Galvan, Alfredo Juarez and Hugo Salinas. However, trial counsel did vigorously cross-examine each of these witnesses, including Salinas, as discussed above. Furthermore, many of the lines of attack on these witnesses's credibility that

8

Petitioner now argues should have been pursued were, in fact, pursued by counsel. Finally, even if Petitioner can now identify additional questions that could have been asked of these witnesses, he cannot show that this possible further impeachment would have affected the outcome of the case.

### Failure to Call Craig Braun

Petitioner next argues that trial counsel was ineffective for failing to impeach Galvan's testimony that Petitioner ordered Craig Braun and Michael Petika to retrieve 16 kilograms of cocaine from behind Petitioner's house. Petitioner argues that counsel could have impeached Galvan's testimony on this point by calling Braun as a witness. Petitioner states that Braun told Petitioner before Petitioner's trial that police had coerced Braun into falsely implicating Petitioner in Braun's testimony before the grand jury. Petitioner also attached a letter from Braun to that effect. Petitioner argues that trial counsel should have interviewed Braun and called him to impeach Galvan's testimony about Braun retrieving the cocaine.

Petitioner's argument is not persuasive. Given the extensive evidence against Petitioner, impeachment of Galvan's testimony on this one point would not likely have had an effect on the outcome of Petitioner's trial. Furthermore, as the Court has previously noted in addressing Petitioner's motion for a new trial based on newly discovered evidence, Braun's letter is suspicious. Braun was interviewed by the Government and stated that he was coerced into writing the letter by Petitioner's associates. Thus, Petitioner cannot show that Braun's testimony at trial would have been helpful to his case.

*Failure to Object to the Henry Savage Recordings*

Next, Petitioner argues that his counsel failed to object to the prosecution's use of recordings by Henry Savage. Savage, a business partner of Petitioner and a witness for the Government, recorded conversations he had with Petitioner in which Petitioner discussed his criminal activity charged in this case. Petitioner claims counsel should have objected to the use of these recordings because the recordings were not consensual, the digital device used to record Petitioner could have been tampered with, and the recordings were not all done on the digital device as stated by the Government at trial. Counsel did in fact object to this evidence, but this Court ruled it admissible. This claim does not show that Petitioner's counsel's performance fell below an objective standard of reasonableness.

*Failure to Move for a Mistrial Due to Use of Racial Slurs*

Petitioner next argues that his counsel should have objected to the testimony about his use of slurs in referring to DEA officers and others. At trial, Galvan testified that Petitioner had referred to an Asian DEA Agent as "Chop Suey," an African-American DEA Agent as "Tubbs," and a female DEA Agent with short hair as "He-She." Petitioner argues that this testimony was unduly prejudicial and that his counsel should have objected. The Government admits that this evidence was prejudicial. However, that is not the standard. Federal Rule of Evidence 403 states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of *unfair prejudice* . . . ." (emphasis added). As the Government points out, Petitioner's comments were evidence of Petitioner's awareness of the investigation and his hostility towards federal agents. This would go towards consciousness of guilt. Thus,

because any objection to this testimony would have been properly overruled, Petitioner has not shown that his counsel's performance in this regard was either deficient or prejudicial.

*Ineffectiveness in Opening the Door to Introduction of Prejudicial Evidence*

Petitioner next argues that his trial counsel improperly opened the door to testimony about Petitioner's extortion of Hugo Salinas. Petitioner's counsel attempted to show that the debt owed to Petitioner was legitimate and that Salinas concocted this allegation of extortion. Counsel was using this to demonstrate Salinas's bias by pointing out that if Petitioner were found guilty of the crimes charged, Salinas would not have to pay the debt he owed Petitioner. This was a strategic decision by trial counsel that cannot now be second-guessed by Petitioner.

*Failure to Notify the Court About Alleged Threats to Petitioner's Wife*

Petitioner next argues that his counsel should have notified this Court of an alleged threat against Petitioner's wife by the Assistant United States Attorney to keep her from testifying. The Government denies any such threat. Regardless, Petitioner fails to show how his counsel's not bringing this allegation to the attention of this Court prejudiced him in a way that would change the outcome of the case.

*Failure to Produce an Expert Witness*

Petitioner next claims a failure of his counsel to utilize an expert. Petitioner's argues that expert testimony was necessary to show that the Government tampered with video evidence and that the drugs seized from behind Petitioner's house were not actually drugs. However, other than Petitioner's unsupported assertions, there is no evidence that either of these allegations is at all true. Thus, Petitioner cannot show he was prejudiced by counsel's failure to retain an expert.

*Deprivation of Right to Testify*

Petitioner argues that counsel did not provide him with the legal advice necessary for him to make an informed decision on whether to waive or exercise his right to testify. However, the record shows that the Court fully advised Petitioner of his right to testify and that Petitioner waived that right. Thus, Petitioner's contention has no merit.

*Ineffectiveness in Direct Examination of Defense Witnesses*

Next, Petitioner claims his counsel should have asked Petitioner's sister, Roselinda Valadez, about a drug ledger she received from Alfredo Juarez. Apparently, Petitioner believes that Roselinda Valadez's testimony would have impeached Juarez's testimony that from 2000 to 2003, Juarez was getting all his drugs from Petitioner, rather than from Galvan. However, given the weight of the evidence against Petitioner, there has been no showing that questioning in this regard would likely have had any effect on the jury's verdict.

Petitioner also lists a number of things that trial counsel allegedly advised defense witness Eric Juarez not to go into during his testimony. Petitioner has not explained how he was prejudiced by trial counsel's actions in this regard. Thus, he has not met the second prong of the *Strickland* test on this basis.

*Ineffectiveness Regarding the Jury Instructions*

Next, Petitioner takes issue with his counsel's acceptance of the jury instructions. Petitioner alleges that his counsel should have requested a jury instruction regarding buyer-seller relations in drug transactions, an instruction on the effect of withdrawing from a conspiracy and multiple conspiracies, and a special finding of the quantity of drugs involved in the case. The jury instructions were proper in Petitioner's case for the charges brought by the Government

12

against Petitioner. Therefore, there is no showing that counsel's performance fell below an objective standard of reasonableness or that these jury instructions caused any prejudice to Petitioner.

*Ineffectiveness Regarding the Jury Note*

Petitioner next takes issue with his counsel's conduct regarding a jury note regarding a special finding relating to the drug amounts. The jury sent the Court a note, asking whether they had to reach a special finding regarding the amount of drugs involved in the case. The Court responded by referring the jury to the jury instructions they were provided. Petitioner alleges that counsel should have advised Petitioner directly of this note and that this Court should have required a special finding of a drug amount in the case. The procedure regarding the jury note has not been shown to have been improper, and there was no cause for an objection by Petitioner's counsel. Thus, Petitioner has not shown that his counsel's performance in this regard was either deficient or prejudicial.

*Ineffectiveness at Sentencing*

Next, Petitioner claims ineffectiveness of counsel during his sentencing. Petitioner alleges that his counsel should have objected to the findings of fact by this Court regarding the aggravating circumstances of the offenses. Petitioner fails to demonstrate any prejudice to Petitioner or that he would receive a lesser sentence if any objection were made.

### Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel was ineffective. However, the Appellate Court agreed with Petitioner's appellate counsel that there were no non-frivolous issues to raise on appeal. *Valadez*, 222 Fed. Appx. at 527. Appellate counsel cannot be found to be ineffective

for failing to make frivolous arguments. Thus, there is no showing that appellate counsel's performance fell below an objective standard of reasonableness or that there was any prejudice to Petitioner.

## Due Process of Law and Right to a Fair Trial

Petitioner alleges that the Government failed to disclose exculpatory evidence and that the Government failed to correct testimony and evidence. The Government contends that it had no additional exculpatory evidence to provide to Petitioner.

In order to establish a *Brady* violation, "the defendant must prove three elements: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the Government, either willfully or inadvertently; and (3) denial was prejudicial. *United States v. Kimoto*, 588 F.3d 464, 474 (7th Cir. 2009) (quoting *United States v. Stott*, 245 F.3d 890, 901 (7th Cir. 2001)).

Applying these principles, Petitioner offers nothing to prove the elements of *Brady*. Instead, Petitioner lists items he believes would be exculpatory but that were not handed over by the Government. The Government responds that all the listed items either were received by Petitioner, were not required to be turned over to Petitioner, or do not exist. Further, even if Petitioner was entitled to any of these items and the Government failed to turn them over, Petitioner has not shown how any denial was prejudicial to Petitioner. Rather, he merely provides a list of items with no related argument. Thus, Petitioner has failed to prove a violation of his due process rights.

## Evidence of Innocence

Petitioner argues that there is evidence that shows Petitioner was innocent of the charged offenses. As an initial matter, these allegations are basically the same as were raised by Petitioner in his post-trial motions and on appeal. The Appellate Court rejected these allegations as frivolous. Furthermore, actual innocence is not a ground for relief under § 2255. *See Echevarria v. United States*, 688 F.Supp.2d 805, 811-12 (N.D. Ill. 2010); *Untied States v. Montano*, 398 F.3d 1276, 1284 (11th Cir. 2005) ("Actual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar caused by Appellant's failure timely to file his § 2255 motion."); *United States v. Evans*, 224 F.3d 670, 674 (7th Cir. 2000). Thus, the evidence cited by Petitioner does not entitle him to relief under § 2255.

### *Certificate of Appealability*

Rule 11 of the Rules Governing § 2255 proceedings provides that a court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.A. § 2253(c)(2). For the reasons set out above, Petitions has not made this showing. Therefore, no certificate of appealability shall issue.

## CONCLUSION

For the above reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 is denied.

Dated: August 17, 2010

JOHN W. DARRAH
United States District Court Judge

15